ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-1096 PAM/SRN |
| | ) | |
| CENEX HARVEST STATES COOPERATIVES f/k/a HARVEST STATES COOPERATIVES f/k/a HONEYMEAD PRODUCTS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## CONSENT DECREE

Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency (EPA), filed a Complaint for civil penalties against Defendant, Cenex Harvest States Cooperatives f/k/a Harvest States Cooperatives f/k/a/ Honeymead Products Company (Defendant) for several alleged violations of the Clean Water Act, 33 U.S.C. §§ 1251 et seq. The United States sought the assessment of a civil penalty pursuant to Sections 309(d) and 311(b)(7)(C) of the Act, 33 U.S.C. §§ 1319(d) and 1321(b)(7)(C).

The Parties agree that settlement of this action is in the public interest and have entered into this Consent Decree in good faith to avoid expensive and protracted litigation.

The Parties recognize that this Consent Decree is a settlement of a contested matter. Participation in the

FILED SEP 05 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD SEP 05 2001
DEPUTY CLERK

settlement does not constitute or represent an admission of law or fact by any Party regarding fault, responsibility, liability, causation or damages asserted by any Party. Nothing in this Consent Decree shall be construed to be, or to represent, any adjudication of any claim or admission of liability.

NOW, THEREFORE, before the taking of any testimony, without any admission of liability, and with the consent of the Parties, it is ORDERED and DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, and Sections 309(b) and 311(b)(7)(E) of the Clean Water Act, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E). Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1395(a), and Sections 309(b) and 311(b)(7)(E) of the Clean Water Act, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E).

## II. PARTIES BOUND

2. This Consent Decree shall apply to and be binding upon the United States and Defendant, and the Defendant's successors.

3. No change in ownership of the Facility or any portion thereof shall in any way alter Defendant's responsibilities under this Consent Decree; nor shall any change in corporate status or ownership affect Defendant's obligations under this Consent Decree.

## III. DEFINITIONS

4. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Clean Water Act or in regulations promulgated under the Clean Water Act shall have the meaning assigned to them in the statute or regulations. Whenever the terms listed below are used in this Consent Decree, the following definitions shall apply:

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Parties" shall mean the United States and Cenex Harvest States Cooperatives f/k/a Harvest States Cooperatives f/k/a/ Honeymead Products Company.

## IV. BACKGROUND

5. The Defendant operates a facility located at 2020 Riverfront Drive in Mankato, Minnesota which uses and stores oil and soy bean products. Due to the volume of oil at the facility, the Defendant is required to file a Facility Response Plan and Spill Prevention Control and Countermeasure Plan.

6. The facility is located along the shore of the Blue Earth River. The Blue Earth River is a navigable water of the United States and is a protected watercourse.

7. Concurrently with the lodging of this Consent Decree, the United States filed a complaint against the Defendant alleging several violations of the Clean Water Act and the regulations promulgated thereunder.

8. The complaint alleges several violations of the Clean Water Act, specifically: failing to file a revised Facility Response Plan in violation of Section 311(j)(5) of the Clean Water Act, 33 U.S.C. § 1321(j)(5), failing to file a response to an information request in violation of Sections 308(a) and 311(m) of the Clean Water Act, 33 U.S.C.§§ 1318(a) and 1321(m), failing to have an approvable Spill Prevention, Control and Countermeasure Plan in violation of Section 311(j) of the Clean Water Act, 33 U.S.C. § 1321(j) and having an unauthorized discharge from the facility in violation of Section 311(b)(3) and (7) of the Clean Water Act, 33 U.S.C. § 1321(b)(3) and (7).

## V. CIVIL PENALTY

9. Defendant shall pay a civil penalty of $56,250 to the United States. Within thirty days of entry of this Consent Decree, Defendant shall pay this $56,250 civil penalty to the United States by Electronic Funds Transfer ("EFT" or "wire transfer"), to the United States Department of Justice lockbox bank, in accordance with specific instructions to be timely provided to Defendant upon entry of this Consent Decree. The payment shall reference DOJ Case No. 90-5-1-1-07000 and United States Attorney File No. 1999V00714. Any funds received at the

Lockbox Bank after 11:00AM (Eastern Time) shall be credited on the next business day. Defendant shall advise the Financial Litigation Unit of the United States Attorney's Office for the District of Minnesota at the time payment is being wire-transferred. In addition, Defendant shall confirm to EPA and the Department of Justice that payment has been made in accordance with Section XIII (Notice), below. Interest on late payments shall be paid as specified in Paragraph 30 herein.

10. This civil penalty shall not be deductible for purposes of Federal taxes.

## VI. SUPPLEMENTAL PROJECT

11. Defendant shall perform the following two Supplemental Environmental Projects (SEPs).

a. Automate Gates O and L

The purpose of this SEP is to install actuators on Gates O and L that allow the gates to be shut down by the press of a switch from various locations within the facility (control rooms, managers building, etc.). This would decrease the amount of time it takes to shut off Gates O and L after the detection of a spill, helping to prevent the release of material to the Blue Earth River. The approximate project cost is $25,000.

b. Upgrade Tank Farm and Control System

The purpose of this SEP is to replace the tank farm monitoring and control system with a modern computer system, which would make it easier and faster for facility operations

personnel to react to potential tank level problem situations. This system would be programmed to monitor not only levels, but also rate of changes in levels (leak detection), and to sound an alarm if any condition warrants action. Key operations personnel would be automatically paged for critical alarm situations. This would decrease response time in the event of a spill, and help prevent the spread of the released material off the facility. The approximate project cost is $275,000.

12. Defendant shall:

a. By no later than 90 days after the entry of the Consent Decree, submit a report to EPA, describing each interim step to be taken for completion and implementation of each SEP and the dates by which such actions will be completed.

b. Complete the construction of each project by no later than December 31, 2002.

13. The total expenditures for the two SEPs shall not be less than $300,000.

14. By entering into this Consent Decree, Defendant hereby certifies that it is not required to perform or develop either SEP by any Federal, State or local law or regulation; nor is Defendant required to perform or develop either SEP by agreement, grant or as injunctive relief in this or any other case. Defendant further certifies that it has not received, and is not presently negotiating to receive, credit in any other enforcement action for either SEP.

15. Defendant shall submit a SEP Construction Completion Report for each SEP to EPA by no later than 60 days after the completion of both SEPs. Each SEP Construction Completion Report shall contain, at a minimum, the following information:

a. A description of the SEP as implemented;

b. A discussion of any significant problems encountered and the solutions thereto;

c. Itemized costs, documented by copies of purchase orders, invoices, receipts, canceled checks, daily filed records or weight slips;

d. A description of the environmental and public health benefits that may or could result from implementation of the SEP; and

e. Certification, in accordance with Paragraph 17 below, that the SEP has been fully implemented pursuant to the provisions of this Consent Decree.

16. Defendant shall maintain legible copies of documentation of the underlying research and data for any and all documents or reports submitted to EPA pursuant to this Consent Decree, and Defendant shall provide the documentation of any such underlying research and data to EPA within seven (7) business days of receiving a request for such information.

17. In all documents or reports, including, without limitation, each SEP Construction Completion Report, submitted to EPA pursuant to this Consent Decree, the Environmental Specialist for Defendant's facility shall sign and certify under penalty of

law that the information contained in such document or report is true, accurate, and not misleading by signing the following statement:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that, based on my inquiry of those individuals immediately responsible for obtaining the information, I believe that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information.

18. Following receipt of each SEP Construction Completion Report described above, EPA will do one of the following:

a. accept the SEP Construction Completion report;

b. reject the SEP Construction Completion report, notifying the Defendant in writing of deficiencies in the SEP and/or SEP completion report and grant Defendant an additional thirty (30) days in which to correct any deficiencies in the SEP and/or SEP completion report prior to seeking stipulated penalties in accordance with the provisions of this Consent Decree.

Except as provided below in Paragraph 19, disputes between EPA and the Defendant concerning the SEP Completion Report shall be resolved in accordance with Section X (Dispute Resolution).

19. If EPA elects to exercise option (b) in Paragraph 18 above, EPA shall permit Defendant the opportunity to object in writing to the notification of deficiency or disapproval within ten (10) days of receipt of such notification. EPA and Defendant shall have an additional thirty (30) days from the receipt by the

EPA of the notification of objection to reach agreement. If agreement cannot be reached on any such issue within this thirty (30) day period, EPA shall provide a written statement of its final decision to Defendant, which decision shall be final and binding upon Defendant, unless Defendant disputes the decision by invoking formal dispute resolution in accordance with Paragraph 34, Section X (Dispute Resolution).

20. In the event a SEP is not completed as contemplated herein, as determined by EPA, stipulated penalties shall be due and payable by Defendant to EPA in accordance with the terms set forth below in Paragraph 21. Successful completion of one SEP, does not excuse a failure to complete the other SEP, nor does it preclude the EPA from seeking stipulated penalties for the incomplete SEP. If both SEPs are not successfully completed, EPA may seek separate penalties for each failure as set forth in Paragraph 21.

21. In the event that Defendant fails to comply with any of the terms or provisions of this Consent Decree relating to the performance of each of the SEPs described above and/or to the extent that the actual expenditures for either one of the SEPs do not equal or exceed the cost of the SEP described above, Defendant shall be liable for stipulated penalties according to the provisions set forth below:

a. For failure to timely complete a SEP, as set forth in Paragraph 12, Defendant shall pay a stipulated penalty in the amount of $1000 for each late day until the SEP

is completed.

b. If a SEP is timely completed but not otherwise satisfactorily completed pursuant to this Consent Decree, Defendant shall pay a stipulated penalty to the United States in the amount of $85,000 for each such failure. However, if EPA determines that Defendant has certified, with supporting documentation acceptable to EPA, that at least 90 percent of the amount of money which was required to be spent was expended on a SEP; EPA may waive all or part of such stipulated penalty.

c. If a SEP is satisfactorily completed as required by this Consent Decree, but the Defendant spent less than 90 percent of the amount of money estimated to be spent for the project pursuant to Paragraph 11(a) or (b), above, Defendant shall pay a stipulated penalty to the United States in the amount of the difference between the amount spent and the amount required to be spent pursuant to paragraph 11(a) or 11(b) above, as applicable.

d. For failure to timely submit a SEP Construction Completion Report required above, Defendant shall pay a stipulated penalty in the amount of $100 for each late day until the report is submitted.

e. The determinations of whether a SEP has been satisfactorily completed shall be in the sole discretion of EPA, which discretion shall be based on the

description of the SEPs contained in this Consent Decree exercised in a reasonable manner under the circumstances, subject to the dispute resolution provision set forth in Section X of this Consent Decree.

f. Stipulated penalties required by subparagraphs a and c, above, shall begin to accrue on the day after performance is due, and shall continue to accrue through the final day of the satisfactory completion of the activity.

g. Defendant shall pay such stipulated penalties within fifteen (15) days of receipt of written demand by EPA for such penalties. Stipulated penalties, and any interest and late charges due thereon pursuant to Paragraph 30, shall be paid by certified or cashiers check to the order of the Treasurer of the United States of America, and mailed to:

Financial Litigation Unit
United States Attorney's Office
Room 600
United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415

The transmittal letter accompanying the check shall specify the caption and docket number of this action and shall reference DOJ Case No. 90-5-1-1-07000 and United States Attorney File No. 1999V00714. A copy of the letter and the check shall simultaneously be sent

to the parties listed in Section XIII (Notices)

22. In any statement to the public by Defendant (whether oral or written, in print, film, or other media) making reference to either SEP, Defendant shall include the following language:

> This project was undertaken in connection with the settlement of an enforcement action taken by the U.S. Environmental Protection Agency for alleged past violations of the Clean Water Act.

23. Defendant agrees that EPA may inspect upon reasonable notice, the area where the SEPs are being implemented in order to confirm that the SEPs are being undertaken in conformity with the representations made herein and in the SEP completion report.

## VII. SPILL PREVENTION, CONTROL AND COUNTERMEASURE PLAN

24. Defendant shall revise and submit a Spill Prevention, Control and Countermeasure Plan (Plan) by no later than August 31, 2001.

25. Following receipt of the Plan, EPA will either:

a. accept the Plan;

b. reject the Plan, notifying the Defendant in writing of deficiencies in the Plan, and grant Defendant an additional thirty (30) days in which to correct any deficiencies in the Plan prior to seeking stipulated penalties in accordance with the provisions of this Consent Decree.

Except as provided below in Paragraph 26, disputes between EPA and the Defendant concerning the Plan shall be resolved in accordance with Section X (Dispute Resolution).

26. If EPA elects to exercise option (b) in Paragraph 25 above, EPA shall permit Defendant the opportunity to object in writing to the notification of deficiency or disapproval within ten (10) days of receipt of such notification. EPA and Defendant shall have an additional thirty (30) days from the receipt by the EPA of the notification of objection to reach agreement. If agreement cannot be reached on any such issue within this thirty (30) day period, EPA shall provide a written statement of its final decision to Defendant, which decision shall be final and binding upon Defendant, unless Defendant disputes the decision by invoking formal dispute resolution in accordance with Paragraph 34, Section X (Dispute Resolution).

27. In the event that Defendant fails to comply with any of the terms or provisions of this Consent Decree relating to the Plan described above, Defendant shall be liable for stipulated penalties according to the provisions set forth below:

a. For failure to timely and satisfactorily complete the Plan, as set forth in Paragraph 24, Defendant shall pay a stipulated penalty in the amount of $500 for each late day until the Plan is completed.

b. The determination of whether the Plan has been satisfactorily completed shall be in the sole discretion of EPA, which discretion shall be exercised in a reasonable manner under the circumstances, and subject to the Dispute Resolution provision in Section X of this Consent Decree.

28. Stipulated penalties relating to the Plan described above shall begin to accrue on the day after performance is due, and shall continue to accrue through the final day of the satisfactory completion of the activity.

29. Defendant shall pay such stipulated penalties within fifteen (15) days of receipt of written demand by EPA for such penalties. Stipulated penalties, and any interest and late charges due thereon pursuant to Paragraph 30, shall be paid by certified or cashiers check to the order of the Treasurer of the United States of America, and mailed to:

Financial Litigation Unit
United States Attorney's Office
Room 600
United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415

The transmittal letter accompanying the check shall specify the caption and docket number of this action and shall reference DOJ Case No. 90-5-1-1-07000 and United States Attorney File No. 1999V00714. A copy of the letter and the check shall simultaneously be sent to the parties listed in Section XIII (Notices).

## VIII. LATE PAYMENT

30. Interest on Late Payments. Interest shall accrue on the unpaid balance of any amounts due to the United States under the terms of this Consent Decree at the rate established by the Secretary of Treasury, pursuant to 28 U.S.C. § 1961. The rate shall be that rate in effect on the date on which the

payment was due. Interest shall be computed beginning thirty (30) days after the date that the amount in question is due and shall continue to accrue until full payment has been made.

## IX. FORCE MAJEURE

31. If an event beyond the control of Defendant occurs, which causes a delay in any of Defendant's duties under this Consent Decree, Defendant shall promptly notify EPA by telephone, and shall within seven (7) days of becoming aware of such event, notify EPA in writing of the delay, the anticipated length of the delay, the cause of the delay, the measures taken by Defendant to prevent or minimize the delay, and the timetable by which Defendant agrees to complete the delayed duties. If EPA agrees that the delay is caused by circumstances beyond the control of Defendant, the time for performance of the affected duties hereunder may be extended for a reasonable period.

## X. DISPUTE RESOLUTION

32. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Defendant that have not been disputed in accordance with this Section.

33. Any dispute which arises under or with respect to this

Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other party a written Notice of Dispute.

34. In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, the Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Defendant.

35. Within 14 days after receipt of Defendant's Statement of Position, EPA will serve on the Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. Within 10 days after receipt of EPA's Statement of Position, the Defendant may submit a Reply.

36. Formal dispute resolution for all disputes shall be conducted pursuant to the procedures set forth in this Paragraph.

a. An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b. The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 36(a). This decision shall be binding upon the Defendant, subject only to the right to seek judicial review pursuant to Paragraph 36(c) and (d).

c. Any administrative decision made by EPA pursuant to Paragraph 36(b) shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Defendant with the Court and served on EPA within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Defendant's motion.

d. In judicial proceedings on the dispute, the Defendant

shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 36(a).

37. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Defendant under this Consent Decree, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in this Consent Decree.

## XI. EFFECT OF SETTLEMENT

38. Defendant's performance of its obligations under this Consent Decree shall resolve all civil claims for the allegations listed in the Complaint through the date of lodging of this Consent Decree. The United States reserves the right to assert claims based on the Defendant's failure to satisfy the requirements of this Consent Decree.

39. Each Party reserves against, any person not a Party to this Consent Decree, all rights, claims, or defenses available to it arising from or relating to the allegations in the Complaint.

40. Defendant agrees not to assert any claims or causes of action against the United States with respect to the claims alleged in the Complaint or for reimbursement for any costs associated with implementation of this Consent Decree.

41. Nothing in this Consent Decree shall relieve Defendant of the duty to comply with all applicable provisions of the CWA and other Federal, State or local laws or statutes.

42. Nothing in this Consent Decree, including the payment of stipulated penalties hereunder, shall be construed as prohibiting, altering or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Defendant's violation of this Consent Decree or of the statutes and regulations upon which this Consent Decree is based.

43. Nothing in this Consent Decree shall be construed to be a ruling on, or determination of, any issue related to any Federal, State or local permit, nor shall it be construed to constitute EPA approval of the equipment or technology installed by Defendant in connection with the SEPs under the terms of this Agreement.

## XII. NON-WAIVER PROVISIONS

44. The Parties agree that it is the responsibility of

Defendant to achieve and maintain compliance with all applicable federal and state laws, regulations and permits, and that compliance with this Consent Decree shall not be a defense to any actions commenced pursuant to said laws, regulations or permits except as specifically set forth herein.

45. This Consent Decree does not limit or affect the rights of Defendant or Plaintiff as against parties not named in this Consent Decree.

## XIII. NOTICES

46. If written notice is required to be given by one Party to another for any reason, it shall be directed to the individuals and addresses specified below, unless the individuals or their successors give notice, in writing, to the other Parties that notice should be directed to a different individual or address. All notices shall reference the Civil Action Number and the Department of Justice file number 90-5-1-1-07000 and United States Attorney File No. 1999V00714.

Notice to the United States:

Chief Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

Karen Vendl
On-Scene Coordinator
Oil Planning and Response Section (SE-5J)
U.S. Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, Illinois 60604-3590

Peter Felitti

Associate Regional Counsel
Office of Regional Counsel
Region 5
U.S. Environmental Protection Agency
77 West Jackson Boulevard (C-14J)
Chicago, IL 60604-3590

United States Attorney's Office
Room 600
United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415

Notice to Defendant:

David A. Kastelic
Assistant General Counsel
Cenex Harvest States
P.O. Box 64089
St. Paul, Minnesota 55164-0089

XIV. PUBLIC ACCESS TO INFORMATION

47. All information and documents submitted by Defendant to EPA pursuant to this Consent Decree shall be subject to public inspection, unless identified and supported by Defendant as confidential business information in accordance with 40 C.F.R. Part 2. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, the public may be given access to such documents or information without further notice in accordance with 40 C.F.R. Part 2, Subpart B.

XV. COSTS OF SUIT

48. Each party shall bear its own costs and attorney's fees in this action. Should Defendant subsequently be determined to have violated the terms and conditions of this Consent Decree,

Defendant shall be liable to the United States for any costs and attorney's fees incurred by the United States in any action in federal court for enforcement of this Consent Decree.

## XVI. REPRESENTATIVES

49. The undersigned representative of the Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Defendant to this Consent Decree.

50. Defendant hereby agrees to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons, and to accept service of the Complaint filed in this action by regular U.S. mail.

## XVII. CONTINUING JURISDICTION/MODIFICATION

51. This Court shall retain jurisdiction to modify or enforce the terms of this Consent Decree or to take any action necessary or appropriate for its construction of execution.

52. Any modification of this Consent Decree must be in writing and approved by the Court. Any such written modification must be agreed to and signed by all parties to this Consent Decree.

## XVIII. PUBLIC COMMENT

53. This Consent Decree shall be lodged with the Court for a period of not less than 30 days, for public notice and comment in accordance with the provisions of 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments received disclose facts or consideration which indicate that the Consent Decree is inappropriate, improper or inadequate. If no comments are received or no changes are proposed in response to public comments, Defendant consents to entry of the Consent Decree without further notice.

XIX. TERMINATION

54. Defendant shall satisfy all of the requirements of this Consent Decree. After at least 30 days written notice to the United States in accordance with Section XIII of this Consent Decree (Notices), Defendant may move this Court for termination of this Consent Decree. Upon consideration of the Defendant's motion and any response by the United States, if the Court determines that Defendant has satisfied all its obligations hereunder, the Court shall terminate this Consent Decree.

IT IS SO ORDERED

August 31, 2001

United States District Judge

Consent Decree, United States v. Cenex Harvest States Cooperatives f/k/a Harvest States Cooperatives f/k/a Honeymead Products Company, Civil Action No.

**FOR PLAINTIFF, UNITED STATES OF AMERICA:**

JOHN C. CRUDEN
Acting Assistant Attorney General
Environmental and Natural Resources Division
United States Department of Justice

______________________ Dated: 5/14/01
W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section

______________________ Dated: 5/15/01
LESLIE ALLEN
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
P.O. BOX 7611
Washington, D.C. 20044-7611
202-514-4114

Consent Decree, United States v. Cenex Harvest States Cooperatives f/k/a Harvest States Cooperatives f/k/a Honeymead Products Company, Civil Action No.

ROBERT M. SMALL
United States Attorney

Friedrich A P Siekert Dated: 6-13-01

FRIEDRICH A. P. SIEKERT
Assistant United States Attorney
Attorney ID Number 142013
600 United States Courthouse
300 S. 4th Street
Minneapolis, MN 55415

Consent Decree, United States v. Cenex Harvest States Cooperatives f/k/a Harvest States Cooperatives f/k/a Honeymead Products Company, Civil Action No.

By: ______________________ Dated: 5/23/01

Sylvia Lowrance
Acting Assistant Adminstrator
Office of Enforcement and Compliance Assurance

Consent Decree, United States v. Cenex Harvest States Cooperatives f/k/a Harvest States Cooperatives f/k/a Honeymead Products Company, Civil Action No.

By: ______________________ Dated: 4-13-01

David Ullrich
Acting Regional Administrator
United States Environmental
Protection Agency, Region V
77 West Jackson Boulevard
Chicago, Illinois 60604-3590

Consent Decree, United States v. Cenex Harvest States Cooperatives f/k/a Harvest States Cooperatives f/k/a Honeymead Products Company, Civil Action No.

FOR DEFENDANT, CENEX HARVEST STATES COOPERATIVES f/k/a HARVEST STATES COOPERATIVES f/k/a HONEYMEAD PRODUCTS COMPANY:

By: ______________________ Dated: March , 2001
Mark L. Palmquist
Executive Vice President/COO
Crop Outputs